Rhonda K. Wood, Justice, concurring. I join the majority. I write separately because I would hold that appellants did not raise their ineffective-assistance-of-counsel claims in a timely manner. In addition, I encourage the bench and bar to reexamine how we address ineffective-assistance claims in dependency-neglect cases. The parents’ mechanism for relief from the adjudication order due to ineffective assistance of counsel, as the majority states, is Rule 60 of the Arkansas Rules of Civil Procedure. It provides, in relevant part, as follows: “to prevent the miscarriage of justice, the court may modify or vacate a judgment ... on motion of the court or any party ... within ninety days.” Ark. R. Civ. P. 60(a) (2015). In this case, the parents alleged that they received ineffective assistance of counsel at the adjudication hearing. That hearing was on February 18, 2015, and the order was filed that same day. Anita Taff-ner first raised the argument that her counsel was ineffective on June 19, 2015, in her response to the Department’s petition to terminate her parental rights.[1] Chris li7Taffner first raised the argument on June 19, 2015, in his motion for a new lawyer. Both of these motions were untimely because they were made more than four months after the adjudication order had been entered. The circuit court therefore lost jurisdiction to modify the adjudication order because more than ninety days had passed. See In re W.L., 2015 Ark. 289, at 10-11, 467 S.W.3d 129, 135. Ineffective-assistance claims must be timely raised. Nowhere is timeliness more important than in dependency-neglect cases. In these cases, we protect the fundamental rights of the parents, but the primary consideration is the best interest of the child. See Dinkins v. Ark. Dep’t of Human Servs., 344 Ark. 207, 40 S.W.3d 286 (2001); Ark.Code Ann. § 9-27-302(2)(B). Permanency is a vital component of protecting the best interest of the child. Ark.Code Ann. § 9-27-341(a)(3) (stating that the intent of termination of parental rights is to provide permanency when returning the child to his parents is contrary to the his best interest). This is why, for example, we adopted Supreme Court Rule 6-9, which provides for expedited appeals in dependency-neglect cases. Ark. Sup.Ct. R. 6 — 9(j) (“Dependency-neglect proceedings shall be prioritized on the calendar of the appellate court.”). We want the children who have been adopted or placed in foster care to know their permanent status rather than deal with the uncertainty of lengthy appeals. Once a party raises a timely claim for ineffective assistance of counsel, the circuit court is duty-bound to consider and rule on the issue. In Jones, this court created confusion for practitioners and circuit courts by adopting the Strickland standard. Jones v. Ark. Dep’t of Human Servs., 361 Ark. 164, 205 S.W.3d 778 (2005). In Jones we declined to address an ineffective-assistance-of-counsel claim; nonetheless, the court went on to adopt the Strickland | ^standard. Because the court did not reach the merits in Jones, the discussion regarding ineffective assistance of counsel is obiter dicta. Obiter dicta is defined as “a judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedent ill.” Black’s Law Dictionary, 1102 (8th ed. 2004). In Nashville Livestock Commission v. Cox, 302 Ark. 69, 76, 787 S.W.2d 664, 668 (1990), we addressed obiter dicta and explained that it is “a remark made, or opinion expressed, by a judge, in-his decision upon a cause, ‘by the way,’ that is, incidentally or collaterally, and not directly upon the question before him.,., Such are not binding precedent.” Because the claim for ineffective assistance was not squarely before the Jones court, the court’s the discussion and application of the Strickland standard is dicta and has no precedential value. What’s more, the court failed to appreciate the practical effects of adopting the Strickland standard, which, in my view, is ill-suited for dependency-neglect cases. Because the question regarding the appropriate standard is again not squarely before this court, we cannot adopt a standard. Therefore, I encourage circuit courts to look at how other-states evaluate these claims. E.g., Susan Calkins, Ineffective Assistance of Counsel in -Parental-Rights Termination Cases: The Challenge for Appellate Courts, 6 J.App. Prac. & Process 179 (2004); see also In re Carrington H., 483 S.W,3d 507 (Tenn.2016). For example, the Oregon Supreme Court has adopted a fundamental-fairness standard. See State ex rel. Juvenile Dep’t of Multnomah Cty. v. Geist, 310 Or. 176, 796 P.2d 1193 (1990). First, that court found “no compelling reason that the same standards applied in adult criminal cases also should be applied in juvenile cases.” Id. at 1202. Second, the court explained that the fundamental^ ¡fairness standard “emphasizes fact-finding procedures [like] ... notice, adequate counsel, confrontation, cross-examination, and standards of proof.” Id. at 1203. Applying this standard, we could easily affirm the ruling of the circuit court, which essentially applied the fundamental-fairness standard. The court -found that the Taffners had free and appointed attorneys; these attorneys had the opportunity to, and did, cross-examine witnesses; and there was an extensive hearing that the Taffners attended. Accordingly, the court found that “the adjudication.hearing was a meaningful hearing.” The court was able to implement this standard easily. If we were to adopt, the .fundamental-fairness standard, there would -be no basis, as the dissenting opinions suggest, to reverse and remand. That remedy would only further prolong the dependency-neglect case and could damage the children. See Baker v. Marion Cty. Office of Family & Children, 810 N.E.2d 1035, 1040 (Ind.2004) (“Due to the immeasurable damage a child may-suffer amidst the uncertainty that comes with such collateral attacks, it is in the .child’s best interest and overall well being to limit the potential for years of litigation and instability.”). In the future, this court and other participants in dependency-neglect cases should take a hard look at this issue. We should adopt a standard that properly balances the parent’s rights, with the children’s best interest. . On August 13, 2015, Anita also filed a separate “motion for a finding that the adjudication was not a meaningful hearing.” This supports the majority’s holding that while the court ruled on this second motion, the ineffective-assistance claim was separate and distinct.