Josephine Linker Hart, Justice, dissenting |24I respectfully dissent. The primary purpose of this court — arguably, the only purpose — is to safeguard the constitutional right of the citizens of this state to due process of law.- The myriad of individual tasks that we perform, from issuing extraordinary writs to statutory construction, are only tools to help us translate the intangible concept of due process into practical mechanisms for resolving a controversy in a just manner. In the- seminal case of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court stated that the essence of due process is a fair trial, which it defined as “one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding.” By that definition, the Taffners, especially Anita Taffner, did not get a fair trial at the adjudication hearing. That hearing ultimately had a disproportionate effect on this case because the circuit judge used the manifestly erroneous rulings that she made to support her decision at the termination-of-parental-rights hearing. The reasons why the Taffners were denied their constitutional right to due process are twofold: the circuit judge failed to act impartially, and the Taffners’ trial counsel provided ineffective assistance by failing to at least preserve the issue, perfect an appeal, and present it to an appellate court. Both of these issues were raised below and are before us on appeal. While I am mindful that neither issue has a weighty body of law compelling this court to rule in the Taffners’ favor, in my view, the very reason for this court’s existence is incompatible with any other holding. I am mindful that heinous allegations were leveled against Chris Taffner. However, if we are properly doing our job, we cannot be swayed by the awful allegation, nor can we | ¡¡¿justify our failure to apply the law by “erring on the side of the children.” Our job is to make sure that the well-established legal procedures and formalities are followed, i.e., that the. respondents received due process. In my view, the basic requirements of due process were not afforded the Taffners. I will address the specific issues of circuit-judge bias and ineffective assistance of counsel in turn. The issue of the circuit judge’s bias is couched in terms' of her refusal to disqualify herself. The majority shrugs off this weighty issue as complaining about a “a few adverse rulings.” The majority completely mischaracterizes Anita Taffner’s argument. Anita identified as “objective indications of bias” the circuit judge’s “systematically interfering with [her] ability to present her case.” Anita cites the following examples. (1) Penalizing her for invoking her Fifth Amendment right to silence, Anita refused to submit to a psychological evaluation and to receive psychiatric counseling because she was concerned with the pending criminal case. Often in dependancy-neglect cases it is apparent that referring to psychological evaluations as “reunification services” is a misnomer. There is no doctor/patient confidentiality involved with either “service,” and even when counseling appears to be helpful, if complete remission is not accomplished in less than a year, insufficient progress is often cited as a reason for terminating parental rights. Here, in the caseof Anita, there was never an allegation that Anita harmed the children in any way or was even aware of any suspected abuse prior to the allegations being presented to state officials. However, Anita was aware that her fourteen-year-old adopted daughter had made false allegations of sexual abuse against her biological father before the Taffners adopted her. | 2b(2) Prohibiting her from introducing evidence of Chris’s innocence after the adjudication hearing, calling it res judicata. This was a manifestly incorrect ruling because it was not a collateral attack on a judgment but a continuing proceeding in the same court. However, that is far from the whole story. Prior to the start of the hearing, both parent counsel and counsel for ADHS had agreed to a dependency-neglect adjudication on stipulated facts,[2] a finding that required only a preponderance of the evidence. ADHS had informed parent counsel that it intended to call only the case worker to testify about how the children were doing in care. The circuit judge rejected the stipulation to the adjudication unless the parties were willing to stipulate by “clear and convincing evidence” so that she could enter an aggravated-circumstances finding. The circuit judge noted that even CACD findings were only by a preponderance of the evidence. Anita’s trial counsel objected; Chris’s was silent. The circuit judge then took over the hearing. I note that by forcing a trial on issues that were not contemplated by the parties is a clear denial of basic due process in that the hearing was directed to issues that were not defined in advance of the proceeding. See Strickland, supra. | ¡¡^Caseworker Cindy Edrington was called. She stated that there was a “true” finding by CACD. However, Edrington recommended services for Anita. The circuit judge insisted that Karis Chastain, a CACD investigator, testify. Chastain stated that she had interviewed BT and KT twice, and she felt “that BT made a credible statement and disclosure.” In her first interview with KT, KT made no disclosure but later said she had been “touched” by Chris. She made her findings against Chris. She stated that Anita “told me that she would choose to support her husband.” Nonetheless, Chastain admitted that there was “no true findings” against Anita. Monika Isenhower, Washington County ADHS investigator for child abuse and neglect, was called next. She testified that she was assigned to do a “safety report.” She stated-that she reported that Anita was “allowing her-husband in the home.” The circuit judge interrupted Anita’s trial counsel’s attempt to examine the witness. Finally, the circuit judge required Detective Bret Hagan to testify. He stated that he was assigned to investigate the Taffners. Hagan further testified that he “beleive[d] that BT and KT made credible disclosures of sexual abuse by Chris.” He claimed he collected “physical evidence” that he “believe[d] corroborates the story of BT and KT.” Hagan also recalled that when he spoke with Anita, “she indicated that she believes her husband.” Hagan’s testimony was not probed by either Anita’s or Chris’s trial counsel, and no indication of what “physical evidence” Hagan collected appears in the record. That fact certainly begs the question of what, if anything, he could have collected since KT’s allegation was only inappropriate touching, and BT made her disclosure at least several days, if not longer, after Usher alleged abuse. Thus, the only evidence produced was testimonial hearsay, delivered in a conclusory fashion. The trial counsel for Anita and Chris called no witnesses. Based on her own advocacy, the circuit judge mad.e an aggravated-circumstances finding against both parents. This finding against Anita was made despite the fact that CACD investigator Karisa Chastain testified that after her investigation, she found “no true findings against her.” I am mindful that several of the witnesses called by the circuit judge recounted that the day the allegations were made against Chris — indeed within minutes of learning of the allegations — Anita stated that she would believe the word of her husband over her teenage child, who had made similar unproven allegations against her natural father. However, but for the circuit judge’s bias, a “no true findings” conclusion to an investigation would not support.,an aggravated-circumstances finding. (3) The circuit judge “banned” the presence of the children at the adjudication hearing. Although the circuit judge noted that the children’s ages ranged from fourteen to ten, prior to the adjudication, the circuit judge ordered that the children not appear in court. She then called the investigators and accepted testimonial hearsay as the sole basis for her ruling. The Taffners were thus denied the opportunity to test the veracity of the statements made by -R.T. and K.T. through cross-examination. In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and its progeny, the introduction of testimonial hearsay is banned. This is one more example of the circuit judge denying the Taffners their right to due process. I ,am mindful that Cranford is a criminal case, however, this court’s previous holdings have extended criminal-trial Sixth Amendment protections to dependency-neglect 1 ^proceedings. See, e.g., Jones, supra. The right to parent one’s children is a liberty interest that is worthy of such protection. See Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The effect of excluding the children from the proceedings meant that key evidence could not be subjected to “adversarial testing.” Once again, the circuit judge’s bias translated into a direct deprivation of due process for the Taffners. See Strickland, supra. ■ ■' .(4) The circuit court abused its discretion by overruling appellant’s motion for a directed verdict. This argument concerns the circuit judge’s performance in the termination hearing. There was scant evidence of the Taffner children’s adoptability and considerable evidence weighing against it. The children are an older-sibling. group of five, all born between January 2001 and February 2005. They had disrupted several foster-home placements. The oldest child had made a previous false sexual-abuse allegation against her biological father that was proved false. Caseworker Edrington testified that the abuse allegations would have to be disclosed to potential adoptive parents, and she stated that, at that time, ADHS was not looking for an adoptive home for the children. Once again, the circuit judge intervened in the proceedings, which can only be characterized as “her case.” The circuit judge supplied the missing proof of the children’s adoptability, finding them “delightful.” There is no indication in the record that the children actually appeared for any of the proceedings. Accordingly, there was no way to probe the basis for the circuit judge’s “expert” testimony, which proved conclusive on this issue. The circuit judge’s conduct and comments demonstrated her bias. The circuit judge actively took over the case. She conducted the adjudication hearing nearly single-handedly. She decided the issues to be tried and the witnesses to be called, and of course, made all the |anfindings. At the termination hearing, she eviscerated thé Taffners’ case and served as a key witness. As I stated- previously, the Strickland Court stated that the essence of due process is a fair trial, which it defined as “one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolütion of issues defined in advance of the proceeding.” Id. The Taff-ners were ambushed by the circuit judge when the issues changed from what the parties’ stipulations to a full hearing in which the circuit judge had ordered that the key -witnesses not be brought to court. Thus, the evidence of alleged abuse was not subjected to adversarial testing of the most important witnesses, BT and KT, were excluded from all the proceedings by the circuit judge. When the Taffners’ trial counsel did object, their objections were overruled — presumably the “few adverse rulings” that the majority acknowledges. Accordingly, the Taffners did not receive due process — just process. I also believe that the Taffners received ineffective assistance of counsel at the adjudication hearing. It is true, as Anita argues, that her first trial counsel, Sarah Williamson, failed .to engage in discovery and failed to call witnesses, but most important, failed to inform her of her appeal rights and failed to perfect her appeal. Given the way the circuit judge handled the adjudication hearing, it is apparent that no lawyer could have produced a different outcome. -However, if the circuit judge’s actions had been timely appealed, it is inconceivable that any appellate court would have affirmed. While in the history of this court’s Rule 37 jurisprudence few inmates have received postconviction relief, a notable exception is Reynolds v. State, 341- Ark. 387, 18 S.W.3d ■ 331 (2000). In that case, the Reynolds court reversed the denial of an inmate’s Rule 37 petition and-ordered a new trial because his trial counsel failed to object to a manifestly incorrect jury | ^instruction, which of course failed to preserve the issue for appeal. Reynolds is analogous because the circuit judge’s conduct was so manifestly biased- and so in excess of her authority that the adjudication order would certainly have been reversed on appeal. I am mindful that the majority believes that this court is somehow prevented from addressing the ineffective-assistance-of-'counsel claim because it was not timely raised pursuant to Rule 60 of the Arkansas Rules of Civil Procedure or because it was not fully developed in the circuit court or because it was not ruled on in the circuit court. None of these procedural bars are compelling. First, the ninety-day limitation in Rule 60(a) relates to the circuit court’s loss of jurisdiction to “modify or vacate a judgment, order, or decree.” Ark. R. Civ. P. 60(a); see In re Guardianship of W.L., 2015 Ark. 289, 467 S.W.3d 129. While a dependency-neglect adjudication is promulgated by an “order,” by the very nature of the proceedings, the circuit court does not lose jurisdiction. On the contrary, the adjudication means that the circuit court will be exercising continuing jurisdiction over the minor child and the parent or parents. An adjudication order is more like an injunction or temporary restraining order, which is subject to being dissolved or modified by the circuit court upon a proper showing, and therefore not subject to the ninety-day limitation. See 2 David Newbern & Watkins, Civil Practice and Procedure § 20:4 (4th ed.). As for whether the issue of ineffectiveness of counsel was “developed,” it was brought before the circuit, court as part of Anita’s response to the petition to terminate her parental rights. In the brief accompanying the pleading, Anita asserted that her first trial counsel was ineffective because she failed to move for a continuance to conduct discovery and, more |S2important, failed to explain her right to appeal. Those deficiencies correspond to the Strickland performance prong. The brief also stated that her counsel’s deficient performance rendered the adjudication proceeding “not a meaningful hearing,” which corresponds to the Strickland prejudice prong. Chris raised the ineffectiveness of his counsel after he petitioned for a new lawyer after the adjudication hearing. In pertinent part he stated in his pro se filing, 3. She has poorly represented me from the beginning. She was not prepared for the hearing that was held on February 18 of this year. She called no witnesses for me and she did not question ‘ any witness who testified. She did not object to any testimony. She did not investigate any of the stories against me and did not interview anyone other than talk to me. She did not tell me that I had the right to appeal the decision or discuss with me any options like filing a motion for a new trial I might have after the decision from the February 18 hearing. 4. She made no effort to investigate the stories against me or obtain any records or reports DHS had before the February 18 hearing. The documents that DHS had that the court did order delivered to my attorney were not provided until aftér the hearing, and my attorney made no effort to postpone the hearing so we could get the information to be prepared for the hearing. As noted previously, the motion was granted and Chris was appointed new trial counsel before the termination hearing. Accordingly, the circuit court was sufficiently apprised of the issues. Finally, the circuit court ruled on the ineffective-assistance-of-eounsel claim, however reluctantly. It denied the Taff-ners a hearing on the issue and addressed it only because Anita’s trial counsel brought' it up in his closing argument at the close of the termination proceeding. The circuit judge made her ruling as she categorically rejected the Taffners’ contention that the adjudication hearing was not “meaningful.” Her exact words are as follows: The Taffners raise the issue of ineffective assistance of counsel. The Taffners were both appointed free attorneys for , them. There was testimony at the hearing of Detective Bret Hagan, the Washington County Sheriffs Office, detective, Karis IsaChastain, the CACD investigator also testified. Based on their testimony, I adjudicated the children to be dependent-neglected. The Taffners had full opportunity to cross-examine all the witnesses and did so. They had a right to discovery with — that was something they could have done. The attorneys made objections throughout that hear-mg, whether or not Mr. Kezhaya and Ms. Tosh[3] think they were proper objections or not, it’s not for me to decide. Obviously, there’s a transcript. And as far as whether or not their attorneys advised them of their right to appeal, I don’t know what they talked about in private with their lawyers. I find that the adjudication hearing was a meaningful hearing. In light of the above-quoted findings by the circuit judge, I am puzzled by the majority’s insistence that the phrase “that’s not for me to decide” was the circuit judge’s entire ruling on the Taffners’ ineffeetive-assistance-of-counsel claim. In my view, the foregoing shows a detailed ruling. The fact that the ruling contained errors of both fact and law does not detract from the unassailable fact that the ruling was made. The appellate courts of this state exist to reverse manifestly incorrect rulings — not to sidestep them or pretend that they do not exist. I would reverse and remand this case and order that it be heard before an unbiased judge. .At the adjudication hearing, the parties stipulated that: 1. The five children were previously in foster care and were adopted by Chris and Anita. 2. Chris was arrested for rape and three counts of second-degree sexual assault involving BT. 3. Arkansas Crimes Against Children Division (CACD) found "true” against Chris with BT as the victim of sexual contact, oral sex, and penetration sex. 4. Criminal charges are pending. 5. Anita continues to live with Chris as his wife. ‘ 6. Anita stated that she believes and sup-1 ports Chris. Based on that, the children cannot return to either parent at this time. . The Taffners were given replacement counsel after the adjudication hearing.