Cite as 2021 Ark. App. 130

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-20-168

| | |
|---|---|
| | **Opinion Delivered** March 17, 2021 |
| SHERRY HENSON and CLARENCE HENSON | |
| APPELLANTS | APPEAL FROM THE LAWRENCE COUNTY CIRCUIT COURT [NO. 38JV-10-110] |
| V. | |
| KANDICE BRUMBLE | |
| APPELLEE | HONORABLE MICHELLE HUFF, JUDGE |
| | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Appellants Sherry and Clarence Henson appeal the Lawrence County Circuit Court's decision to terminate the guardianship of their granddaughter, KH. They assert the circuit court erred in affording appellee Kandice Brumble the fit-parent presumption in terminating the guardianship. We affirm.

The Hensons are Ms. Brumble's parents. KH was born to Ms. Brumble on March 4, 2010. On September 1, Sherry Henson petitioned the juvenile division of the Lawrence County Circuit Court for guardianship of KH in a family-in-need-of-services (FINS) petition. A hearing was held on September 8, and on September 9, an order was entered granting the Hensons temporary guardianship of KH. On December 8, the juvenile division held a review hearing, and on December 13, an order was entered stating, "SHOW PROOF OF STABLE HOUSE OF PROOF OF INCOME THEN WILL CHANGE

GUARDIANSHIP. PERMANT [sic] GUARDIANSHIP OF CHILD TO BE WITH GRANDPARENTS UNTIL PROVED DIFFERENTLY. DRUG TEST MOTHER TODAY."

On February 29, 2016, the Hensons filed a petition in the circuit court under the 2010 FINS case for the appointment of coguardians of KH's person and estate, alleging Ms. Brumble was still unable to provide a safe, suitable home for KH. On May 24, Ms. Brumble filed a petition to terminate the Hensons' 2010 guardianship over KH or, in the alternative, moved for standard visitation. A hearing on both petitions was held on January 30, 2017. The circuit court determined it was in KH's best interest for the permanent guardianship to remain in place and denied Ms. Brumble's request to terminate the guardianship. The circuit court further determined the Hensons had the discretion to determine the circumstances, nature, and length of Ms. Brumble's visitation with KH.

On March 8, 2018, Ms. Brumble filed a second motion to terminate the guardianship, alleging that there had been a material change in circumstances since the guardianship was entered in 2010—she had been married to Brice Brumble since December 2015 and had a good, stable relationship; she had a stable job working at Randolph County Nursing Home; she and Mr. Brumble had three other children in the home who were healthy and happy; it was in KH's best interest to spend time with and get to know her siblings; she had not been in any trouble for several years; and she did not use alcohol, cigarettes, marijuana, or any illegal drugs. Ms. Brumble requested that a visitation schedule be established and a court date set to review the visitation with the ultimate goal being termination of the guardianship and return of KH's custody to her. The Hensons asserted

that the guardianship was still necessary, and termination of the guardianship was not in KH's best interest.

The parties entered into an agreed order in December 2018 giving Ms. Brumble three six-week alternating weekend periods of visitation, with each successive six-week period granting increased visitation. The parties agreed that after the initial eighteen weeks of visitation, Ms. Brumble's visitation would continue on an alternating-weekend schedule until further order from the circuit court.

After a hearing on November 18, 2019, the juvenile division of the circuit court granted Ms. Brumble's petition to terminate the guardianship finding that she was a fit and proper person to have custody of KH and that it was in KH's best interest to be raised by her mother.[1] It further granted the Hensons visitation with KH one weekend a month for six months and ordered that the visitation coincide with their court-ordered grandparent visitation with KH's two siblings but determined that at the end of the six months, KH's visitation with the Hensons would be at Ms. Brumble's discretion. The Hensons now appeal the circuit court's order terminating their guardianship.

Our appellate courts review guardianship proceedings de novo, but we will not reverse a circuit court's finding of fact unless it is clearly erroneous. *Sherland v. Sherland*, 2015 Ark. App. 342, 465 S.W.3d 3. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a

---

[1]Although guardianship proceedings are generally probate cases, the juvenile division of circuit court is not restricted from hearing a guardianship matter that arises in juvenile proceedings. *Kantor v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 402, 559 S.W.3d 747 (citing Ark. Sup. Ct. Admin. Order No. 14(1)(b)).

mistake has been made.  *Id.*  In cases involving children, we afford even more deference to the circuit court's findings because our appellate courts have made it clear there is no other case in which the superior position, ability, and opportunity of the of the circuit court to observe the parties carries a greater weight than one involving the custody of a child.  *Id.*

A guardianship may be terminated by court order if it is "(A) no longer necessary; and (B) no longer in the best interest of the ward."  Ark. Code Ann. § 28-65-401(b)(3) (Supp. 2019).[2]  In *Troxel v. Granville*, 530 U.S. 57, 68–69 (2000), the United States Supreme Court held that "there is a presumption that fit parents act in the best interests of their children," and "so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."  If the natural parent is found to be unfit, then he or she is not entitled to the fit-parent presumption.  *Morris v. Clark*, 2019 Ark. 130, 572 S.W.3d 366.  In *Donley v. Donley*, 2016 Ark. 243, 493 S.W.3d 762, and *In re Guardianship of W.L.*, 2015 Ark. 289, 467 S.W.3d 129, our supreme court held that the guardianships were no longer necessary once a fit parent revoked his or her earlier given consent to the guardianship.  In *In re Guardianship of E.M.R.*, 2019 Ark. 116, at 7, 571 S.W.3d 15, 19, the supreme court expanded the fit-parent presumption to a fit parent who did not consent to a guardianship, holding that such a parent "must still be afforded a natural parent's

---

[2]This statute was amended in 2017 to make the requirements conjunctive.  This section previously provided that a guardianship could be terminated by court order if it was "no longer necessary *or* no longer for the best interest of the ward." Ark. Code Ann. § 28-65-401(b)(3) (Repl. 2012) (emphasis added).

constitutional right to raise his or her child without undue interference from the government" as recognized in *Troxel*.

The Hensons assert Ms. Brumble was not entitled to the fit-parent presumption under *Troxel*. They contend that Ms. Brumble was found unfit in 2010 when the Hensons were granted temporary guardianship through the FINS petition.

We disagree with the Hensons' assertion that Ms. Brumble was not entitled to the fit-parent presumption. Although the Hensons claim the initial guardianship was the result of a finding of unfitness, none of the orders have ever made a finding Ms. Brumble was unfit, including the FINS order that first placed temporary guardianship with the Hensons. The circuit court has no authority to retroactively declare Ms. Brumble unfit, *see W.L.*, *supra*, and the supreme court has specifically declined to recognize a "de facto" finding of parental unfitness, *see E.M.R.*, *supra*. Because Ms. Brumble has never been found by the circuit court to be unfit, she is entitled to the fit-parent presumption that she is acting in KH's best interest.[3]

The Hensons assert that even if Ms. Brumble was entitled to the fit-parent presumption, they had rebutted it and that it was in KH's best interest for the guardianship to remain in place. We disagree.

---

[3]The Hensons also argue Ms. Brumble did not meet the requirements for the natural-parent preference as guardian under Arkansas Code Annotated section 28-65-204(a) (Repl. 2012), which provides that "[t]he parents of an unmarried minor, or either of them, if qualified and, in the opinion of the court, suitable, shall be preferred over all others for appointment as guardian of the person." However, as Ms. Brumble points out, she was not asking the circuit court to appoint her as KH's guardian—she was asking for guardianship to be terminated, which is governed in these circumstances by section 28-65-401(b)(3).

There was vastly conflicting testimony at the guardianship-termination hearing. Ms. Brumble testified that she has a stable income and a four-bedroom home and is married to Mr. Brumble, who had adopted her other two children in 2016. She explained that the guardianship had been in place for nine years because initially she was unaware she could return to court to attempt to have it terminated. Ms. Brumble noted that she had complied with the visitation set forth in the agreed order, and she said KH had fun during those visits. She said she was "wild" in her younger years, going to clubs and drinking, but she has changed. Specifically, she testified that since the agreed order, she had remained employed, had not been arrested, and had not done drugs, used alcohol, or had any altercations with her husband. Ms. Brumble attended KH's extracurricular activities, and she had not missed any of the visits she was afforded. Although Ms. Brumble admitted that her relationship with her mother had been rocky prior to the guardianship, she testified that she would not keep KH from the Hensons. Ms. Brumble claimed that KH and Mr. Brumble have a great relationship and that he would never hurt her or call her names.

Mr. Brumble testified that he and KH have a good relationship, and he has a good relationship with Ms. Brumble's other two children, whom he had adopted. Although he had been unemployed due to health issues, Mr. Brumble explained that he had been cleared to return to work and was planning to seek immediate employment. Although he admitted that he had used a paddle to spank KH's siblings, he denied that he whipped the children with a fishing pole as alleged, and he stated he had never paddled or disciplined KH because he is not her parent.

Sherry Henson testified that she and Mr. Henson obtained guardianship of KH because Ms. Brumble was "running with the wrong crowd" and not taking care of KH. She believed terminating the guardianship was not in KH's best interest. Her stated reasons were that her home was the only one KH had ever known, and Ms. Brumble had never offered to support KH. Ms. Henson said KH had been in therapy since she was six, and she began to have nightmares after the Brumbles married; she explained that KH twists her hair, has chest pain and trouble breathing, is anxious during and after the visits with Ms. Brumble, and is very clingy. Ms. Henson expressed concern that her relationship with KH would end if the guardianship was terminated. She was also concerned KH would have to go to a different church if the guardianship was terminated because Ms. Brumble's religious beliefs are different than hers, and she worried KH would have to attend a different school away from her friends. Ms. Henson worried KH would lose her relationship with her biological father, which she had fostered but had never told Ms. Brumble about. She described Ms. Brumble's visitation since the agreed order as rocky, although she had seen KH on a regular basis. She claimed to worry about KH's being in danger with Ms. Brumble, but she had never contacted the authorities about these concerns.

Vicki Martin, KH's counselor, testified she had been seeing KH for anxiety issues due to visits with her mother. Martin said KH is afraid of Mr. Brumble because he yells at her and tells her she is spoiled, and he spanks the other children in front of her and tells her that he wants to spank her. She said KH claimed that she had been called a "faggot" at her mother's house and that they used the N–word, which she did not like. KH told Martin she does not want to live with Ms. Brumble if Mr. Brumble is there. While she had done

7

some family sessions with KH and Ms. Henson, Martin had never met with Ms. Brumble. Martin stated that she did not think it was her decision to say whether KH should stay with her grandparents until she is eighteen.

KH testified that she likes living with the Hensons, and it is the only place she ever remembered living. She said she wants to live with Ms. Brumble because she likes seeing her. She also testified Mr. Brumble makes her uncomfortable by saying words she did not like, yelling, and getting "feisty." KH said she has nightmares about Mr. Brumble. She admitted Mr. Brumble had never spanked or punished her, but it scares her when he spanks the younger kids with a paddle. She said she does not like Mr. Brumble very much, but nothing makes her uncomfortable at her grandparents' house.

In its order terminating the guardianship, the circuit court determined there was nothing to indicate Ms. Brumble is an unfit parent, and it is in KH's best interest to be raised by her mother. Noting that the change would be difficult for KH because she is accustomed to the manner in which the Hensons operate their household, the circuit court ordered visitation for the Hensons with KH one weekend a month for six months; after that, it was up to Ms. Brumble as a fit parent to decide with whom KH associated. The order also directed that Mr. Brumble is not to spank KH or use any physical discipline with her, and he was "strongly encouraged" to obtain and keep steady employment.

The circuit court is in the best position to assess the testimony of the witnesses in guardianship proceedings. *Sherland*, *supra*. The circuit court heard all the testimony and concluded that it was in KH's best interest for the guardianship to be terminated and for KH to be raised by Ms. Brumble. We cannot say that this finding is clearly erroneous.

While communication breakdowns will inevitably occur between a parent and grandparents when there is protracted litigation regarding a child, *see W.L.*, *supra*, the Hensons' concerns go to the issue of their differences in ideas of how to raise KH, not Ms. Brumble's fitness to raise KH.

Affirmed.

ABRAMSON and MURPHY, JJ., agree.

*Branch, Thompson, Warmath & Dale, P.A.*, by: *Adam H. Butler*, for appellants.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Kenneth P. "Casey" Castleberry*; and *Ryan K. Wallace*, for appellee.