SLIP OPINION

Cite as 2015 Ark. App. 342

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-14-791

| | |
|---|---|
| CHARIS SHERLAND<br><br>APPELLANT<br><br>V.<br><br>TERRI SHERLAND<br>APPELLEE | **Opinion Delivered** May 27, 2015<br><br>APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT<br>[NO. PR-2013-170]<br><br>HONORABLE WILL FELAND, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Charis Sherland appeals from the Lonoke County Circuit Court's appointment of her mother, appellee Terri Sherland, as guardian of Charis's daughter, N.S. (DOB: 9-18-04). On appeal, Charis argues that (1) the current interpretation of Arkansas Code Annotated section 28-65-204(a) (Supp. 2013) is unconstitutional and does not acknowledge the presumption that a fit parent acts in the best interest of her child, (2) the trial court erred in determining that a guardianship was desirable because there was no evidence that the allegations of sexual abuse were true, and (3) the trial court erred in failing to consider the natural-parent preference because the court had not found that she was unqualified or unsuitable. We affirm.

### I. *Procedural History*

On May 30, 2013, Terri Sherland petitioned for emergency ex parte guardianship of her granddaughter because Charis's live-in boyfriend, Brandon Brewer, was accused of

sexually abusing the child. Terri alleged that the Arkansas Department of Human Services had advised her to keep N.S. in her custody and that the matter was being investigated by the local police and the Crimes Against Children Division of the Arkansas State Police. Terri further alleged that Brewer had a history of physically abusing Charis and that Charis was pregnant with Brewer's child. The trial court appointed Terri as temporary guardian of N.S. in June 2013. Following a hearing in October 2013, the trial court continued the guardianship because of concerns that Charis had expressed doubt regarding the allegations of sexual abuse, that Brewer was said to be at Charis's residence "more often than not," and that Charis continued to have a significant, ongoing relationship with Brewer. Following another hearing in June 2014, the trial court entered an order finding that the applicable guardianship statutes are not unconstitutional and that it was in N.S.'s best interest for Terri to be appointed guardian. From that order comes this appeal.

II.   *Guardianship Statutes and Standard of Review*

Before appointing a guardian, the court must be satisfied that (1) the person for whom a guardian is prayed is either a minor or otherwise incapacitated; (2) a guardianship is desirable to protect the interests of the incapacitated person; and (3) the person to be appointed guardian is qualified and suitable to act as such. Ark. Code Ann. § 28-65-210 (Supp. 2013). The parents of an unmarried minor, or either of them, if qualified and, in the opinion of the court, suitable, shall be preferred over all others for appointment as guardian of the person. Ark. Code Ann. § 28-65-204(a).

Our appellate courts review guardianship proceedings de novo, but we will not reverse

SLIP OPINION

a finding of fact by the circuit court unless it is clearly erroneous. *Witham v. Beck*, 2013 Ark. App. 351, 428 S.W.3d 537. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* In cases involving children, we afford even more deference to the trial court's findings because our appellate courts have made it clear that there is no other case in which the superior position, ability, and opportunity of the trial judge to observe the parties carries a greater weight than one involving the custody of a child. *Wilson v. Wilson*, 2013 Ark. App. 759, 431 S.W.3d 369.

### III.   *Hearing in June 2014*

Terri testified that both Charis and N.S.'s former counselor had told N.S. to say that Brewer did not rape her. Terri stated that, because Charis had a baby with Brewer in October 2013, Charis will continue to have contact with him, which would be detrimental to N.S. Terri expressed concern that Charis would resent N.S. if Brewer were convicted of rape.

Shawnda Smith, mother of two of Brewer's children, testified that Brewer had physically abused her. Smith stated that she will be a witness in Brewer's trial for the rape of N.S. According to Smith, Brewer threatened her over the telephone with regard to her upcoming testimony and that she heard what she believed was Charis laughing in the background.

Elizabeth Knight, N.S.'s former counselor, denied Terri's allegations that she had instructed N.S. to say that Brewer did not rape her. Knight testified that Terri had thwarted her efforts to speak with N.S. alone and that she had otherwise compromised counseling

sessions. While expressing no opinion on the sexual-abuse allegations, Knight believed N.S. had been hurt in an encounter with Brewer when he hit her on the back. N.S. had told her that she was afraid her little brother could get hurt. Knight testified that she was unaware that Charis was having an ongoing relationship with N.S.'s attacker. Knight could not recommend that N.S. go someplace where she still felt afraid.

Heather Collias, N.S.'s current counselor, testified that N.S. was terrified to go back to the environment she was in when she was abused. Collias reported that N.S. had difficulty sleeping, nightmares, and a high level of anxiety. Collias testified that N.S. told her that Charis had instructed her to deny the allegations that Brewer sexually abused her.

Charis admitted that she remains in contact with Brewer. Charis testified that she loves Brewer and that he loves her. Charis testified that she did not believe N.S. was sexually abused, although she acknowledged that Brewer was being tried for rape. She insisted that it was all due to lies told by Terri, who had alienated her from N.S. Charis denied ever urging N.S. to say that Brewer did not rape her.

IV. *Arguments*

A. Constitutional Challenge and the *Troxel* Presumption

Charis argues that the current interpretation of Ark. Code Ann. § 28-65-204(a) is an unconstitutional infringement on her fundamental right to raise her child and that taking her child from her without finding that she was unfit violates the Due Process Clause.

If a statute is alleged to be unconstitutional, the Attorney General shall be served with a copy of the proceeding and be entitled to be heard. Ark. Code Ann. § 16-111-106(b)

(Supp. 2013). The purpose of the notice statute is to prevent a statute from being declared unconstitutional without a full adjudication with adversarial parties. *City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982), *overruled on other grounds by T & T Chem., Inc. v. Priest*, 351 Ark. 537, 95 S.W.3d 750 (2003). It is generally reversible error when the Attorney General fails to receive notice of a constitutional attack on a statute, *Reagan v. City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991), but reversal is not mandated by the notice statute. *Cash*, *supra*. This general rule has not been applied in some exceptional circumstances, those being where all the issues have been briefed and argued by litigants who are clearly adversarial. *Id*.

There is no indication in the record that Charis gave the Attorney General notice of her challenge to Ark. Code Ann. § 28-65-204(a), and the issues were not fully developed and argued below. Therefore, we do not consider the constitutional aspect of Charis's argument on appeal. *See, e.g.*, *Brumley v. Naples*, 320 Ark. 310, 896 S.W.2d 860 (1995) (supreme court may choose not to consider an argument on ground that no notice of constitutional challenge to statute was given to Attorney General).

Charis also argues that the current interpretation of Ark. Code Ann. § 28-65-204(a) does not acknowledge the presumption that a fit parent acts in her child's best interest. She further contends that, although the statute includes a natural-parent preference, it improperly makes that preference subservient to the best interest of the child.

The United States Supreme Court in *Troxel v. Granville*, 530 U.S. 57 (2000), a grandparent-visitation case, established a presumption that a fit parent acts in the best interest of her child. "[S]o long as a parent adequately cares for his or her children (i.e., is fit), there

5

will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id*. at 68–69. Charis relies on *In re Guardianship of S.H.*, 2012 Ark. 245, 409 S.W.3d 307, in which the Arkansas Supreme Court recognized that a mother, who had not been deemed unfit, was entitled to the *Troxel* presumption in a proceeding to terminate a consensual guardianship.

Here, however, we have an initial contested guardianship proceeding, and *Fletcher v. Scorza*, 2010 Ark. 64, 359 S.W.3d 413, is directly on point. In that case, our supreme court made clear that the sole considerations in determining a guardianship pursuant to Ark. Code Ann. § 28-65-204(a) are whether the natural parent is qualified and suitable and what is in the child's best interest. "To the extent that any of our prior cases suggest a standard of fitness or unfitness in guardianship proceedings involving the statutory natural-parent preference, we overrule them." *Fletcher*, 2010 Ark. 64, at 13, 359 S.W.3d at 421. The supreme court also noted that the natural-parent preference is but one consideration, which is subservient to the principle that the child's best interest is the paramount consideration. *Id*.

In *Gantt v. Arkansas Department of Human Services*, 2013 Ark. App. 217, this court affirmed an order appointing the paternal aunt guardian of Gantt's children because Gantt was "not emotionally in a position to protect the children" following an abusive relationship to which the children had been exposed. This court rejected Gantt's arguments that there was no evidence that she was an unfit mother and that she was entitled to the natural-parent preference, stating that her arguments did not accurately reflect our guardianship laws and

citing *Fletcher, supra*.[1] Thus, to the extent that the trial court did not consider Charis's fitness as a parent, there was no error under the current interpretation of our guardianship laws.[2]

In any event, there was evidence from which the trial court could have reasonably concluded that Charis was unfit. After all, a parent has a duty to protect her child. *See, e.g., Lipscomb v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 257 (affirming a finding of dependency-neglect where mother suspected sexual abuse perpetrated by stepfather, yet mother failed to protect her child). Charis was aware of the sexual-abuse allegations at least one year prior to the 2014 proceeding, yet she testified that she did not believe her daughter, despite the various investigations and a pending criminal charge against Brewer. Instead, Charis remained devoted to Brewer, even though she knew that her continued relationship with him was an impediment to regaining custody of N.S. The trial court could have found that Charis put her relationship with Brewer before the best interest of her child. Assuming a finding on fitness was required by *Troxel*, the evidence would support a finding that Charis was unfit. This court may affirm the trial court when it reaches the right result, albeit for the wrong reason. *Tiner v. Tiner*, 2011 Ark. App. 478, 385 S.W.3d 326.

## B.   Lack of Evidence

---

[1]"The General Assembly is presumed to be familiar with the appellate courts' interpretation of its statutes, and if it disagrees with those interpretations, it can amend the statutes. Without such amendments, however, the appellate courts' interpretations of the statutes remain the law." *Miller v. Enders*, 2013 Ark. 23, at 12–13, 425 S.W.3d 723, 730 (citing *McCutchen v. City of Fort Smith*, 2012 Ark. 452, at 19, 425 S.W.3d 671, 683 (internal citations omitted)).

[2]In granting Terri's petition for guardianship of N.S., the trial court discussed Charis's "issues of fitness."

Next, Charis argues that the trial court erred in finding that a guardianship was desirable because there was no evidence that Brewer had actually abused N.S. and no proof that she had knowingly permitted or condoned any abuse. She urges this court to find that there was insufficient evidence of any neglect or abuse by her.

As a preliminary matter, the question on appeal is limited to the propriety of the trial court's appointing Terri as N.S.'s guardian and not the sufficiency of evidence to show that Charis's actions amounted to neglect or abuse.

The evidence that the trial court had before it was that N.S. had disclosed to both counselors what she accused Brewer of doing to her. Collias believed N.S. had been sexually abused. While Knight did not give an opinion on the truthfulness of N.S.'s sexual-abuse allegations, she was "confident" that Brewer had physically hurt N.S. by hitting her on the back. Smith indicated that Brewer was a violent man who had physically abused her, and Terri alleged that Brewer had physically abused Charis. The sexual-abuse allegations were being investigated by authorities, and a prosecutor apparently believed there was sufficient evidence to charge Brewer with rape. Charis disbelieved her own child, and there was evidence that she had attempted to quiet N.S. in an effort to protect Brewer.

The child's best interest is the paramount consideration in guardianship matters, *Fletcher*, *supra*, and there was evidence from which the trial court could have found that it was not in N.S.'s best interest to return her to a home where N.S. was fearful for her safety and that of her younger brother. The trial court, which determines credibility, could have concluded that N.S. remained at risk and that Charis would not protect her from harm. We

8



hold that the trial court did not clearly err in determining that a guardianship was desirable.

### C. Natural–Parent Preference

Finally, Charis argues that the trial court erred in not applying the natural–parent preference because she had not been found unqualified or unsuitable. There is a statutory preference to be given to the parent "if qualified and, in the opinion of the court, suitable" to be appointed guardian, as set forth in Ark. Code Ann. § 28-65-204(a). This natural–parent preference does not automatically attach to a child's natural parents; it is within the trial court's discretion to make a determination as to whether a parent is "qualified" and "suitable." *Wilson*, *supra*. Nothing in section 28-65-204(a) requires specific findings. *See also Kuelbs*, *supra* (noting that no hearing or specific factual findings were required by sections 28-65-203 and 28-65-210). In appointing Terri guardian of N.S., the trial court noted Charis's "voiced skepticism" with respect to N.S.'s allegations of sexual abuse "in clear contradiction" of the child's counselor, her "continued significant social contact" with Brewer, and a lack of stability in Charis's life and home. We conclude from this language that the trial court was not satisfied that Charis was suitable to be N.S.'s guardian, despite the statutory preference.

Affirmed.

GRUBER and WHITEAKER, JJ., agree.

*Bailey & Oliver Law Firm*, by: *Frank H. Bailey*, *Sach D. Oliver*, and *T. Ryan Scott*, for appellant.

*Christopher R. Warthen*, for appellee.