ROBIN F. WYNNE, Associate Justice
Christine Hartman (now Smyth) appeals from the Franklin County Circuit Court's order denying her petition to terminate the guardianship of her two minor children, E.R. and D.R. She argues on appeal that the circuit court was clearly erroneous in applying the best-interest-of-the-child standard as opposed to determining the fitness of the natural mother; not finding her to be a fit parent; and failing to determine whether the guardianship's original function remained, as required by Arkansas Code Annotated section 28-65-401. Furthermore, appellant argues that even assuming arguendo that the correct standard was "best interest," the circuit court was clearly erroneous in finding that it would not be in the best interest of the minor children to be placed with their natural mother. We reverse and remand with instructions for the circuit court to enter an order terminating the guardianship.
The guardianship of E.R., born in 2003, and D.R., born in 2005, arose when appellees Marla and Franklin Reardon, the paternal grandparents, filed a petition for emergency and permanent guardianship in August 2013 after appellant's husband, Sam Hartman, was charged with the sexual abuse of E.R. The court entered an ex parte order for emergency temporary guardianship.[1] Appellant filed a motion to dismiss the petition for guardianship and an alternative answer in which she denied the material allegations in the petition. Following a hearing, the court granted the *17 Reardons a permanent guardianship, finding as follows:
That probable cause existed at the time of the entry of the Ex Parte Order for Emergency Custody and probable cause continues to exist. Specifically, the Court finds that Respondent Christine Hartman has subjected the minor child [E.R.] to Sam Hartman's family and homes of his family members in Logan County. The Court takes notice that Mr. Hartman is facing charges of Rape, a class Y felony for engaging in deviate sexual activity with the minor [E.R.] for a period of time from January 1, 2011 until May 6th, 2013, which was during the course of the marriage with Respondent and Mr. Hartman. Mr. Hartman is also facing charges of Tampering with Physical Evidence, Third Degree Assault on the Respondent, and Interfering with Emergency Communication 1st Degree.[2 ] Additionally, the Court finds that Mr. Hartman's family has inappropriately tried to influence the minor child and the court has great concern over the minor children having contact with his family. The minor child testified in court that the situation was troubling her and she felt more safe at the Petitioner's residence.
The court further found that it was in the best interest of both children for the guardianship to be granted. No finding regarding the parental fitness of appellant was made. Appellant was awarded standard unsupervised visitation to take place at the home of her mother, Debra Smyth, with instructions that there was to be no contact between the children and Sam Hartman or his family.
On January 24, 2017, appellant filed a petition to terminate the guardianship. She alleged that since the guardianship order had been entered there had been "material changes in circumstances where it is currently now in the best interest of the minor children to be with their biological mother, [appellant]"; that she was fit and appropriate to care for her children; and that the circumstances had changed such that she had filed for divorce and her husband was currently in the Arkansas Department of Correction. A hearing was held on November 14, 2017. At the hearing, the parties agreed that there had been no finding of unfitness as to appellant in the permanent guardianship order. The court asked, "Is this agreed then that what we are going to be looking at is that Mom needs to set out why things are different than they were as stated in that 2013 order?" Appellant's counsel responded, "We intend to set that out. I believe that the court could also determine whether she is fit or unfit in this case, but we intend to present both."
At the conclusion of the evidence, the court ruled from the bench that the petition to terminate the guardianship would be denied. The court entered an order denying appellant's petition to terminate guardianship, adopting in full the statements of the Reardons' counsel in closing argument at the hearing (attached to the order as an exhibit and incorporated therein), and setting forth additional findings. The court found that "the original order dealt with Petitioner's failure in allowing Mr. Hartman's family to have access to her daughter, with the crux being that she had exhibited poor judgment and did not prioritize her children." The court found that "the Petitioner's lack of prioritizing *18 these children and poor judgment was the reason for originally granting this guardianship and those reasons still exist." Specifically, the court faulted appellant for the length of time it took her to get divorced,[3] which the court attributed to her continuing to choose her husband over her children until his appeals had been exhausted; the fact that she had recently moved into her mother's four-bedroom house, which raised "concerns regarding whether the Petitioner could herself, provide reasonable accommodations for these children"; her testimony regarding having had issues in the past concerning whether she believed E.R. and whether she had anger at E.R.; and for seeking out parenting education from someone certified in the age group of her youngest child, not the ages of E.R. and D.R. In addition, regarding the second prong of section 28-65-401(b)(3), the circuit court found that the children had flourished in their grandparents' care and that "it is not in the best interest of these children to change things mid-stream and return them to a situation that hurt them before." In its analysis of the best interest of the children the court cited Graham v. Matheny , 2009 Ark. 481, 346 S.W.3d 273, a guardianship case that has been overruled, and Bamburg v. Bamburg , 2014 Ark. App. 269, 435 S.W.3d 6, a custody-and-visitation case between ex-spouses. This appeal followed.
We review probate proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. In re Guardianship of W.L. , 2015 Ark. 289, 467 S.W.3d 129. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. Id. When reviewing the proceedings, we give due regard to the opportunity and superior position of the circuit court to determine the credibility of the witnesses. Id.
Arkansas Code Annotated section 28-65-401(b)(3) (Supp. 2017) provides that "[a] guardianship may be terminated by court order after such notice as the court may require ... [i]f, for any other reason, the guardianship is: (A) [n]o longer necessary; and (B) [n]o longer in the best interest of the ward."[4] Here, the circuit court found that neither requirement of the statute had been met and that the guardianship should remain in place.
The circuit court did not make a finding of unfitness when it granted the permanent guardianship in 2013 or when it denied the petition to terminate the guardianship. The Reardons argue that the court made a "de facto" finding of unfitness in this case. Specifically, they point to the court's statements from the bench that, going back to the beginning of this case, appellant had shown "a complete disregard for parental responsibility." However, they cite no authority for such a finding and we decline their invitation to recognize a "de facto" finding of parental unfitness. In Guardianship of W.L. , 2015 Ark. 289, 467 S.W.3d 129, this court rejected the circuit court's reasoning that, while it had not expressly found the father to be unfit, such a finding had been made without the use of the word "unfit." This court held *19 that the circuit court's finding of unfitness was clearly erroneous, concluding that "the circuit court could not retroactively declare [the father] unfit." In re Guardianship of W.L. , 2015 Ark. 289, at 11, 467 S.W.3d at 135. Then, in Donley v. Donley , 2016 Ark. 243, 493 S.W.3d 762, this court addressed a finding of unfitness of the natural mother in a temporary guardianship, which was superseded by the entry of an agreed permanent guardianship that did not contain a finding of unfitness. We held that the mother was a fit parent and that the circuit court had erred in failing to afford her the fit-parent presumption when she revoked her consent and sought to terminate the guardianship. Here, appellant has never been adjudicated an unfit parent. Therefore, in accordance with our reasoning in W.L. and Donley , appellant in the present case is a fit parent. As we have previously stated:
Parents have a fundamental right to raise their children. We will not lightly intrude on this fundamental right. We have already said that a guardianship is no longer necessary once a fit parent revokes an earlier-given consent. This is because a fit parent is presumed to be acting in the child's best interest. By petitioning to terminate the guardianship and revoking consent, the fit parent, who has the child's best interest at heart, informs the court that the guardianship is no longer necessary.
In re Guardianship of W.L. , 2015 Ark. 289, at 7-8, 467 S.W.3d at 133. We recognize that both W.L. and Donley were decided in the context of guardianships to which the parents had consented but later revoked their consent and petitioned for termination of the guardianships. However, a fit parent who did not consent to a guardianship must still be afforded a natural parent's constitutional right to raise his or her child without undue interference from the government as recognized by the Supreme Court of the United States in Troxel v. Granville , 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). "[S]o long as a parent adequately cares for his or her children (i.e. , is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." Troxel , 530 U.S. at 68-69, 120 S.Ct. 2054. Thus, parental fitness is at the heart of termination-of-guardianship cases involving parents of minor wards.
Turning now to the termination-of-guardianship statute, we hold that appellant was entitled to the fit-parent presumption that the guardianship was no longer necessary when she so informed the court in her petition to terminate the guardianship. Ark. Code Ann. § 28-65-401(b)(3)(A) ; see In re Guardianship of W.L. , 2015 Ark. 289, 467 S.W.3d 129. At that point, the Reardons had the opportunity to challenge appellant's fitness or to show exceptional circumstances that would overcome the fit-parent presumption. We note that it is clear from the record that the reasons for the guardianship-exposure to Sam Hartman's family members and E.R.'s feeling safer at the Reardons' home-no longer existed by the time of the termination hearing. Accordingly, we hold that the circuit court clearly erred in finding that the reason for originally granting this guardianship still existed.
Regarding the second prong of the statute, whether the guardianship is no longer in the best interest of the wards, see Ark. Code Ann. § 28-65-401(b)(3)(B), it appears that the circuit court focused on the success of the children in the guardians' care and found that "there is no reason to remove them from a stable situation mid-course and send them back to the unknown." However, the circuit court failed *20 to accord appellant the presumption that a fit parent acts in her children's best interest. See Troxel , 530 U.S. at 68, 120 S.Ct. 2054 ("[T]here is a presumption that fit parents act in the best interests of their children."). Furthermore, nothing in this record rebuts that presumption. The evidence showed that appellant had stable employment, a suitable home, family support, and a close relationship with E.R. and D.R., who both wanted to live with her. Further, overnight visitation had been consistently exercised with no issues other than minor disciplinary disagreements with the Reardons regarding D.R. In short, the presumption that appellant has acted in her children's best interest was not rebutted on this record, and the circuit court clearly erred in finding that it remains in the children's best interest to leave the guardianship intact. Accordingly, we reverse and remand with instructions to the circuit court to enter an order terminating the Reardons' guardianship of E.R. and D.R.
Reversed and remanded with instructions.
Wood and Womack, JJ., dissent.

The Reardons' son and appellant were divorced, and appellant was the custodial parent. The Reardons' son consented to the guardianship.

According to the affidavit for Sam Hartman's arrest, police came into contact with him on May 6, 2013, when they responded to a domestic-disturbance call, and he agreed to be interviewed. He admitted having sexual contact with E.R. Sam Hartman was eventually convicted of raping E.R. and received a sentence of life imprisonment.

Appellant's divorce decree was entered on July 10, 2017.

In Act 717 of 2017, the General Assembly amended the termination-of-guardianship statute to make both prongs necessary by replacing the word "or" with "and." Act of Mar. 28, 2017, No. 717, 2017 Ark. Acts 3698. See In re Guardianship of W.L. , 2015 Ark. 289, at 8, 467 S.W.3d at 134 (under the prior version, "given that the legislature has created a disjunctive test, the parent can move to terminate under either prong").