Cite as 2021 Ark. App. 302

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
**No.** CV-20-413

| | |
|---|---|
| HEATHER GALLI<br><br>APPELLANT<br><br>V.<br><br>LINDA JONES AND VINTON JONES<br><br>APPELLEES | **Opinion Delivered** June 2, 2021<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION<br>[NO. 60PR-19-2204]<br><br>HONORABLE VANN SMITH, JUDGE<br><br>AFFIRMED |

### MIKE MURPHY, Judge

In this one-brief appeal, Heather Galli appeals the Pulaski County Circuit Court order appointing Linda and Vinton Jones as permanent guardians of her daughter, A.C. On appeal, Heather argues that the circuit court erred by appointing the Joneses as guardians because (1) the court did not find her to be an unfit parent, and the evidence shows that she is a fit parent; and (2) the court did not credit her testimony concerning a video recording. We affirm.

A.C. was born November 27, 2013, to Heather Galli and Fred Chapman. Linda is Fred's mother and A.C.'s paternal grandmother. Vinton is Linda's husband. Following Heather's relationship with Fred, Heather married Dennis Galli.

On October 15, 2019, Heather's mother, Charlene Taylor, filed an ex parte emergency petition for a guardianship of A.C. In the petition, Charlene stated that A.C.

was in Linda's custody, and she asserted that her guardianship was necessary to protect A.C. from Heather's volatile relationship with Dennis.

On October 17, Linda moved to intervene and also requested guardianship of A.C. She stated that A.C. had been in her care since September 23, 2019, when two orders of protection were filed against Heather and Dennis on behalf of A.C. She explained that the court granted the protection orders after viewing a surveillance video showing Dennis severely beating Heather in A.C.'s presence. She noted the video had generated more than 700,000 views on Facebook. She further alleged that Heather has a history of drug abuse and other criminal activity and that Fred was in prison for unrelated criminal activity. Linda further asserted that Charlene had physically abused Heather.

On the same day Linda moved to intervene, the court granted her request. The court also denied Charlene's emergency petition. On December 18, the court conducted a temporary-guardianship hearing. Prior to the hearing, Charlene withdrew her petition to be appointed guardian. On December 20, 2019, the court entered an order granting the Joneses a ninety-day temporary guardianship of A.C.

On March 4, 2020, the court held a final hearing. Linda testified that she sought the guardianship after she had viewed the video showing a man violently beating Heather in A.C.'s presence. She believed the man was Dennis. Linda stated that Dennis has a history of substance abuse and that his biological children had accused him of sexual abuse. She further testified that Heather had married Dennis following the incident. Linda testified that Heather has a history of being with violent men.

Heather testified that she was currently pregnant with Dennis's child. She stated that Dennis is not the man in the video and that he was out of town on the date of recording. She testified that she and Dennis were separated at the time and that the man is someone whom she met on Facebook. She testified that this man had invited her and A.C. to a birthday party, and that was where she was attacked. She admitted that Dennis's parental rights had been terminated to his other children. Dennis did not attend the hearing. Heather's friend, Alicia Shumpert, verified Heather's testimony. She, however, admitted that she did not witness the incident in the recording.

Following the hearing, the court entered an order granting the Joneses a permanent guardianship. In the order, the court noted,

> Even though Heather Galli contends Dennis Galli was not the abuser [in the recording], there was no evidence presented that was not available or discoverable at the final order of protection hearings on October 15, 2019. In fact, this Court has been clear that if Dennis Galli can prove that he was working out of state at the time of the abuse, the Court would grant Heather Galli relief. However, neither Heather nor Dennis Galli have produced any credible evidence that he was out of town working, and therefore, not available to have abused Heather Galli in front of the child.

From that order, Heather has now timely appealed.

We review probate proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Mossholder v. Coker*, 2017 Ark. App. 279, 521 S.W.3d 150. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*.

Arkansas Code Annotated section 28–65–210 (Repl. 2012) provides:

> Before appointing a guardian, the court must be satisfied that:

3

(1) The person for whom a guardian is prayed is either a minor or otherwise incapacitated;

(2) A guardianship is desirable to protect the interests of the incapacitated person; and

(3) The person to be appointed guardian is qualified and suitable to act as such.

When the incapacitated person is a minor, the key factor in determining guardianship is the best interest of the child. *Fletcher v. Scorza*, 2010 Ark. 64, 359 S.W.3d 413.

On appeal, Heather first argues that the circuit court erred by granting the Joneses a permanent guardianship because the court made no finding concerning her fitness. She asserts that the supreme court requires courts to determine the fitness of the natural parent when terminating that parent's rights and granting a guardianship over a child. To support her argument, she cites *In re E.M.R.*, 2019 Ark. 116, 571 S.W.3d 15, and *Morris v. Clark*, 2019 Ark. 130, 572 S.W.3d 366. However, these cases pertain strictly to termination-of-guardianship proceedings. There are different statutory requirements for granting a guardianship and terminating a guardianship.

Arkansas Code Annotated section 28-65-204(a) (Repl. 2012) provides that the parent of an unmarried minor, if qualified and, in the opinion of the court, suitable, shall be preferred over all others for appointment as guardian of the person. In *Fletcher*, our supreme court rejected Heather's argument that a natural parent must be proved unfit before a guardianship may be entered in favor of someone other than the natural parent. 2010 Ark. 64, at 12, 359 S.W.3d at 420. The court noted that section 28-65-204(a) "makes no mention of whether the natural parent is 'fit' or 'unfit,' as those terms have been used in custody cases." *Id*. The court went on to hold that

4

the sole considerations in determining guardianship pursuant to Ark. Code Ann. § 28-65-204(a) are whether the natural parent is qualified and suitable and what is in the child's best interest. To the extent that any of our prior cases suggest a standard of fitness or unfitness in guardianship proceedings involving the statutory natural-parent preference, we overrule them.

*Id.* at 12–13, 359 S.W.3d at 421; *see also Mossholder*, 2017 Ark. App. 279, 521 S.W.3d 150 (holding that a natural parent does not need to be proved unfit before a guardianship may be entered in favor of someone other than the natural parent). Accordingly, we reject Heather's argument.

Heather also argues that the guardianship is not in A.C.'s best interest because the circuit court erred in finding that Dennis is the man who brutally attacked her. She argues that the court should have rewatched the video to determine whether the man matched Dennis's description, and she claims that the court arbitrarily rejected her testimony. Heather's argument is a request to reweigh the evidence. In reaching its conclusion, the court found Linda's testimony more credible. Heather gave an incredulous account of the events leading up to the video. It was unnecessary for the court to rewatch the video when it had ample testimony surrounding the event and Dennis's history. In cases involving children, we afford even more deference to the circuit court's findings because, as our appellate courts have made clear, there is no other case in which the superior position, ability, and opportunity of the circuit court to observe the parties carries a greater weight than one involving the custody of a child. *Sherland v. Sherland*, 2015 Ark. App. 342, 465 S.W.3d 3.

The evidence thus establishes that A.C. would be at risk of harm in Heather's custody. Relying on the court's credibility determination, the facts before us are that

5

Heather chose to marry a person who has a history of sexual and physical violence, who had his parental rights to his other children terminated, and who has a history of substance abuse. She is not merely a victim of an unexpected, physical attack by an acquaintance. As the court stated, "[T]he rationale and the theory is, is that by placing a child into the presence of an abuser, that is in itself not taking care of the child." Having considered all the testimony presented and the circuit court's superior position to weigh and assess the credibility of witnesses and their testimony, we are not left with a definite and firm conviction that a mistake was made by the circuit court.

Affirmed.

ABRAMSON, GRUBER, BARRETT, and WHITEAKER, JJ., agree.

HIXSON, J., dissents.

**KENNETH S. HIXSON, Judge, dissenting**.   After reading the majority opinion, one might question what actually occurred below to justify the removal of a seven-year-old child from a battered mother.  The problem is that we just do not know because there is no evidence in the record to support the removal. The evidence, if any, is buried in other case filings in the bowels of the Pulaski County Courthouse archives.  If the evidence exists, we do not have it.  The majority cites testimony from the March 4 final hearing, which is perhaps wishful, but literally nonexistent.  All we have in our record are anecdotes and averments in pleadings.  Not only is there a paucity of evidence in the record to support the majority opinion, assuming arguendo that everything in the petition for guardianship is true, the majority opinion can best be summarized as condoning the removal of a child from a battered mother because the mother was beaten in the child's presence and the battered

6

mother will not identify her assailant. Woe to any battered mother who dares not identify her assailant. While I appreciate the majority's interest in protecting minor children, battered mothers are also entitled to protection. There is no evidence in this record that the mother had ever been beaten or battered before. There is no evidence that the mother had been beaten or battered in the eight-month interval between the beating in the video and the filing of the petitions. There is no evidence that the mother has been beaten or battered since the petitions were filed. There is no evidence in this record that the minor child has ever been subjected to abuse or will be abused in the future. In fact, the grandmother who was awarded custody testified in open court that the *only reason* she believed a guardianship was necessary was because the mother was beaten in front of the child:

> Q:    Your reason for wanting this guardianship is because of the video and that's it?
>
> A:    (Linda Jones) Yes.
>
> . . . .
>
> A:    I don't care who it was in the video. He beat her. She kept [her daughter] in that situation.
>
> . . . .
>
> Q (Re-direct): Does it matter to you who that was?
>
> A:    No, it doesn't. It's the fact that the fighting in front of my granddaughter like this, that is what matters to me.

As a matter of fact, the paternal grandmother, Linda Jones, testified that prior to the video, she did not even know Dennis Galli and had no concerns for the safety of A.C. or the interaction between A.C. and Dennis. So, as one reads these opinions one should bear in

mind this is not about credibility; this is not about protecting a child from abuse from her mother; and this is not about our standard of review. This is a case where the child had never been abused, but the paternal grandmother, who had a minimal relationship at best with the mother and child over the prior six-year period while her divorced son (the father) battled drug addiction for which he was ultimately incarcerated, saw a video on Facebook. Based on that Facebook video and that video alone, the paternal grandmother demanded that the long arm of the Arkansas judiciary remove the child from her battered ex-daughter-in-law because ex-daughter-in-law had the misfortune of being beaten and battered in front of the child. The majority agrees. I cannot join such a decision, and I dissent.

I agree with the majority, based on the existing supreme court caselaw that we are bound to follow, that Heather Galli is incorrect in arguing that the trial court was required to find her unfit before granting the guardianship. The supreme court expressly rejected this argument in *Fletcher v. Scorza*, 2010 Ark. 64, 359 S.W.3d 413, holding that a finding of parental unfitness is not a prerequisite to awarding a guardianship to someone other than the natural parent. *See also Mossholder v. Coker*, 2017 Ark. App. 279, 521 S.W.3d 150 (where we applied *Fletcher* and held that a finding of parental unfitness is not required in a guardianship case).

Nonetheless, Heather also argues:

The Joneses did not even question Heather's ability to provide a home for A.C. until Linda saw the video of the attack. As the Court recognized, no one has "ever really said [Heather] is not able to take care of [A.C.]. It's the fact that she allowed this child to be placed in the presence of someone who abused her in front of the child." *This reasoning is nonsensical. Being a victim of an unexpected, physical attack by an acquaintance does not make someone an unfit parent. It does not negate that parent's constitutional right to raise her child in the home she chooses.* The circuit court clearly erred in interfering with that right when it found it was in A.C.'s best interest

8

to grant the Joneses' request for permanent guardianship over Heather's objection. Accordingly, the Court's decision cannot stand.

(Emphasis added.) Based on the record before this court (or lack thereof), I agree with Heather that the trial court clearly erred in finding that the guardianship was in A.C.'s best interest.

There is a scarcity of evidence in *our* record regarding the best interest of the child. There were three cases below involved here. An order of protection against Heather Galli (60DR 19–3643), an order of protection against Dennis Galli (60DR 19–3644), and a later guardianship proceeding (60PR–19–2204).[1] The three cases are independent. Each had a different case number below. Most, if any, of the relevant evidence regarding best interest of the child is *apparently* in the record for the orders of protection, which are not on appeal. More importantly, the record from those proceedings is *not* contained in our record. What is clear in our record is that the trial court relied on the record from the various hearings involving the orders of protection to make its findings and decision in our case. Not only was the record from the orders of protection relied on by the trial court, the attorney for the grandparents below in the final guardianship proceeding even advised the trial judge that if he was going to rely on the record from the orders of protection, he should include that record in the guardianship proceedings. The trial judge did not. So, in reviewing *our* record on appeal and searching for what occurred below, we have one hand tied behind our backs and one eye closed. However, the majority overlooks our disability.

---

[1]All three of these cases were instigated by Heather's estranged mother who also saw the video and who later dismissed herself from the cases.

9

The twenty-second video recording (upon which the trial court obviously relied) is *apparently* in the record from the orders of protection but is not in our record. There was *apparently* testimony in the prior proceedings identifying Dennis Galli as the assailant in the video (upon which the trial court obviously relied), but this is not in our record. There was *apparently* testimony in the prior proceedings that Heather still lives with Dennis Galli (upon which the trial court obviously relied), but this is not in our record.[2] The actual orders of protection (upon which the trial court obviously relied) are not in our record.

So what are we left with to review? There are allegations in the pleadings, but allegations in pleadings are not evidence. What we are left with is the testimony of A.C.'s grandparents, Linda and Vinton Jones, and A.C.'s mother, Heather Galli. The grandparents' testimony can best be summarized as they have been caring for A.C. for several months and are good caregivers. Linda stated that the sole reason for wanting a guardianship was that Heather was beaten in front of her child. She believes that it is irrelevant who delivered the beating. Heather testified that she is a good mother, that she has raised A.C. her entire life, that she is not a danger to A.C., and that she was prepared to take A.C. home. Heather also testified that, for whatever relevance, Dennis Galli was not her assailant. Heather instead stated that her assailant was a man she had met on Facebook who had assaulted her at a birthday party. Heather stated that she absolutely would not put A.C. in a situation that would expose her to the kind of violence shown on the video.

---

[2]I acknowledge that Linda Jones testified at the guardianship hearing that "when a woman is beat like that and their kid is watching it, she shouldn't stay with the person and then marry him afterward." However, Linda did not testify that Heather still lives with Dennis Galli nor did Heather testify to that effect.

10

At the conclusion of the guardianship hearing, the Joneses' counsel stated that Dennis's grandmother had identified Dennis as the man in the video at the *prior hearing on the orders of protection*,[3] and that "I don't believe there's sufficient evidence to overturn the court's judgment last time."  Again, clearly the Joneses' counsel is invoking testimony from a prior hearing that is not part of our case or our record, and the trial court relied on his argument.  Heather's counsel urged the trial court to view the video again before making its ruling on the guardianship issue.  Heather's counsel stated that Dennis's grandmother's identification of Dennis from the prior proceedings was not credible, asserting that the man's face was not visible in the video.  Heather testified that Dennis has several tattoos on his arm and that the assailant in the video did not have tattoos.  The trial court declined to view the video at the guardianship hearing stating that it had already seen it several times.  The trial court stated, "*You know, the rationale and the theory is that by placing this child into the presence of an abuser, that is itself not taking care of the child. . . .  I don't know if anyone's ever really said that Heather is not able to take care of the child.  It's the fact that she allowed this child to be placed in the presence of someone who abused her in front of the child.*" (Emphasis added.)

In the trial court' order awarding Linda and Vinton Jones a permanent guardianship of A.C., the trial court made these pertinent findings:

> 13. Linda Jones stated the reason for the guardianship was because of the domestic abuse case which stemmed from a video showing Heather Galli being abused violently by Dennis Galli in the presence of the child.  Linda Jones is concerned because Dennis Galli will live in the home with Heather Galli and the child.
> 14. Heather Galli testified that the guardianship should be denied because Dennis Galli was not the abuser in the video.  Heather Galli claimed that she had new evidence to prove that Dennis Galli was not in the video.  Alicia Shumbert,

---

[3]Dennis's grandmother did not testify during the guardianship proceedings.

Heather Galli's friend, testified that she picked up Heather Galli and the child on the night Heather was attacked. She stated she never saw Dennis Galli that night. Dennis Galli did not attend the hearing.

15. After considering the arguments of each party, the Court finds that the guardianship is to continue since Heather Galli still lives with Dennis Galli. Even though Heather Galli contends Dennis Galli was not the abuser, there was no evidence presented that was not available or discoverable at the final order of protection hearings on October 15, 2019. In fact, this Court has been clear that if Dennis Galli can prove that he was working out of state at the time of the abuse, the Court would grant Heather Galli relief. However, neither Heather nor Dennis Galli have produced any credible evidence that he was out of town working, and therefore, not available to have abused Heather Galli in front of the child.

. . . .

17. It is in the child's best interest that Petitioners be permanently appointed Co-Guardians of the person and estate of the child, subject to the further Orders of the Court.

18. Accordingly, Petitioners, Linda Jones and Vinton Jones are granted a permanent guardianship of the person and estate of A.C.

In *Fletcher v. Scorza*, 2010 Ark. 64, 359 S.W.3d 413, our supreme court held that when the incapacitated person is a minor, the key factor in determining guardianship is the best interest of the child. We review probate proceedings de novo, but we will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Combs v. Stewart*, 374 Ark. 409, 288 S.W.3d 574 (2008). In my review of the evidence before the trial court in these guardianship proceedings, I am firmly convinced that the trial court clearly erred in awarding the grandparents a guardianship.

As acknowledged by the trial court, there is no evidence in the record suggesting that Heather is unable to properly care for A.C. In fact, the evidence showed that Heather had been caring for A.C. for her entire life. Nor is there any evidence that A.C. would be at risk of harm in Heather's custody. The video underlying the guardianship order is not in

12

the record; the record does not substantiate the assertion that Dennis was the perpetrator of the abuse committed against Heather; the record does not show that Heather and Dennis still live together; and the orders of protection are not even in the record. Limiting our review to the record before this court, there is nothing for us to review that would support the trial court's pertinent findings with respect to its guardianship award.

Furthermore, the trial court placed a next-to-impossible burden on Heather. The trial court indicated that if *Heather could prove* Dennis was not the assailant, then it would refuse to grant the guardianship. At the hearing the trial court stated, "Mr. Galli has at his fingertips to find proof where he was that night. I mean, I have not seen anything." In the guardianship order, the trial court stated, "[T]his court has been clear that if Dennis Galli can prove that he was working out of state at the time of the abuse, the Court would grant Heather relief. However, neither Heather nor Dennis Galli have produced any credible evidence that he was out of town working, and therefore, not available to have abused Heather Galli in front of the child." That is a complete reversal of the burden of proof. Arkansas Code Annotated section 28-65-210 (Repl. 2012) provides what must be proved to the trial court in order to appoint a guardian, and this includes proof that a guardianship is desirable to protect the best interests of the child. *See Wilson v. Wilson*, 2013 Ark. App. 759, 431 S.W.3d 369. The Supreme Court of the United States has long recognized that a parent has a fundamental constitutional right to parent his or her children without undue government interference. *Troxel v. Granville*, 530 U.S. 57 (2000). However, here, unless the natural mother proves a negative—that her husband was not the assailant—then she loses custody of her child.

Even assuming arguendo that Dennis was the person in the video, I cannot subscribe to a victim of *spousal* abuse losing custody of her child based exclusively on a single episode of abuse *to the mother*, and nothing more. There was no child abuse. There is no evidence that Heather is not a good mother; there is no evidence that A.C. is not well cared for in Heather's custody; there is instead evidence that Heather was the unfortunate victim of being beaten a single time in the presence of her child. In my view, the majority has established an unseemly precedent for any mother who has been the victim of domestic abuse. Whether the abuser was the man Heather met on Facebook or Dennis Galli, requiring a victim of domestic abuse to reveal the identity of her abuser or risk losing custody of her child is, in my opinion, untenable.

Finally, I would be remiss if I did not openly ponder why this case was not referred to the Arkansas Department of Human Services for investigation. Assuming every allegation in the petition for guardianship was true, this is precisely the type of case for which DHS is designed to intervene and manage. We hear dozens of dependency-neglect cases each year. In virtually every case, the parents are offered a plethora of programs to rehabilitate parents, protect children, and keep the family unit intact. Does Dennis require counseling and perhaps anger management? Does Heather need protection from Dennis? Does A.C. need some counseling or some kind of protection? Are parenting classes appropriate? All of these are pertinent questions and worthy of investigation by appropriate professionals. But instead of proceeding through the stringent safeguards provided to parents and children by DHS protocols, the trial court circumvented those protections and simply awarded custody and guardianship in a guardianship proceeding.

I would reverse the guardianship because the trial court clearly erred in finding that the guardianship was desirable to protect the best interests of the child.

For these reasons, I dissent.

*Lion Legal Services*, by: *Danielle Hasty*; and *Walas Law Firm, PLLC*, by: *Breean Walas*, for appellant.

One brief only.