Cite as 2026 Ark. App. 146

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CV-25-31

| | |
|---|---|
| DANIEL BAHNER | Opinion Delivered March 4, 2026 |
| APPELLANT | |
| | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT |
| V. | [NO. 26PR-24-280] |
| SUSAN WAKEFIELD AND KELLI LARUE | HONORABLE CECILIA DYER, JUDGE |
| APPELLEES | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

This case is an appeal of the Garland County Circuit Court's order granting appellee Susan Wakefield guardianship over appellant Daniel Bahner's minor children ("MC1" and "MC2"). Bahner argues on appeal that the circuit court erred in granting the permanent guardianship to Wakefield without making a finding that he is unfit; thus, reversal is required. We affirm.

## I. *Background Facts*

Jessica Cogburn and Bahner are the biological parents of MC1 and MC2—ages nine and ten.[1] The children were in the legal custody of Jessica, and Bahner had supervised visitation pursuant to a custody order in a separate matter, case No. 26DR-16-219. Bahner

---

[1] The record reflects another child, age thirteen ("MC3"); however, the minor is not subject to this appeal because MC3 is not Bahner's biological child. MC3's father is deceased, and Bahner is not contesting Wakefield's guardianship of MC3.

alleged that Jessica obstructed his supervised visitation—that was supposed to be supervised at Change Point—which led Bahner to file a motion for contempt in April 2024. On May 6, 2024, Jessica abandoned the children, leaving them in the care of family. Despite efforts to contact Jessica, she has been unreachable. On May 14, Susan Wakefield, Jessica's mother, filed a petition to be appointed guardian of the three children due to their mother's abandonment.

The circuit court entered an emergency guardianship in favor of Wakefield on May 17. Thereafter, Kelli LaRue, Bahner's sister, intervened in the matter and filed a competing petition for the appointment of guardian of MC1 and MC2. Jessica executed a waiver of service and consent to guardianship that consented to Wakefield's appointment as guardian of her children. On May 29, the circuit court held a hearing on the competing temporary-guardianship petitions. Bahner consented to the guardianship in favor of his sister, LaRue, but he contested the appointment of Wakefield. Bahner stated that he had been unable to exercise his supervised visitation due to Jessica's interference. On June 12, the court denied LaRue's guardianship petition and entered an order granting Wakefield temporary guardianship of MC1 and MC2. Wakefield was also appointed as guardian of MC3, and the court noted that it was not in the children's best interest to separate MC1 and MC2 from their oldest sibling—MC3.

A final guardianship hearing was held on August 5, 2024. The court heard testimony from the children's current therapist, Haley Rogers; various relatives of Wakefield; and Wakefield herself that the minor children were doing well in Wakefield's care. The court

2

also heard testimony from Bahner as well as the executive director of Change Point, Terri Sturnard, regarding Bahner's completion of his twelve supervised visits with MC1 and MC2 and how those visits progressed well with both children. After Bahner's testimony, the court asked whether Bahner was seeking custody of the children or asking to have his sister, LaRue, appointed guardian. Bahner responded that his "end goal" was to have "guardianship of [his] children and custody."

At the end of the hearing, the court questioned the attorneys regarding the different guardianship statutes. Furthermore, the court noted that if it denied both petitions for guardianship, then it was the court's belief that custody, legally speaking, would remain with Jessica due to the pending domestic-relations case. Bahner's counsel argued that, given Jessica's absence from the guardianship proceedings, the court had jurisdiction to award custody to Bahner until the issue of custody could be heard in the domestic-relations case. Counsel for Wakefield responded that custody should be heard in the pending domestic-relations case, and if the court terminated the temporary guardianship, it would leave the children and the case "in an awkward position." The court asked both parties to submit posttrial briefs on the issue of whether the probate division of circuit court could award custody through a guardianship case.

On August 13, the court issued a letter opinion outlining its ruling and appointing Wakefield as MC1's and MC2's guardian. In the August 21 written order, the court found that Wakefield is the most qualified and suitable guardian for the children; that Jessica is unfit; that the guardianship is desirable to protect the children's interest; and that Bahner is

3

not suitable to have guardianship of the minor children. Bahner was awarded unsupervised visitation with MC1 and MC2. Bahner filed a timely notice of appeal; this appeal followed.

## II. *Standard of Review*

This court reviews probate proceedings de novo but will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *In re Guardianship of Helton*, 2020 Ark. App. 132, 594 S.W.3d 903. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* When reviewing the proceedings, we give due regard to the opportunity and superior position of the circuit court to determine the credibility of the witnesses. *Id.*

## III. *Points on Appeal*

Bahner contends that the circuit court (1) erred in appointing Wakefield as the guardian of MC1 and MC2 without making a formal finding that he is unfit; (2) violated the constitutional presumption in favor of a fit parent by failing to acknowledge that he has not been found unfit and is presumed to act in the best interest of his children; and (3) failed to apply the statutory standard that allows for the termination of a guardianship when it is no longer necessary and in the best interest of the children.

## IV. *Discussion*

Arkansas Code Annotated section 28-65-210 provides that before appointing a guardian, the court must be satisfied that (1) the person for whom a guardian is prayed is either a minor or otherwise incapacitated; (2) a guardianship is desirable to protect the interest of the incapacitated person; and (3) the person to be appointed guardian is qualified

4

and suitable to act as such. Ark. Code Ann. § 28-65-210 (1)–(3) (Repl. 2012). When the incapacitated person is a minor, the key factor in determining guardianship is the best interest of the child. *See In re Guardianship of A.B.*, 2018 Ark. App. 529, 562 S.W.3d 891.

Preferential status in a guardianship proceeding may be given to the natural parents of a child. Ark. Code Ann. § 28-65-204(a) (Repl. 2012).[2] Section 28-65-204(a) provides that "[t]he parents of an unmarried minor, or either of them, if qualified and, in the opinion of the court, suitable, shall be preferred over all others for appointment as guardian of the person." Thus, only a natural parent who is both qualified and, in the opinion of the circuit court, suitable, shall be preferred over all others to be the child's guardian; however, the natural-parent preference does not automatically attach to a child's natural parents. *See Fletcher v. Scorza*, 2010 Ark. 64, 359 S.W.3d 413.

## A. Fitness Finding

First, Bahner contends that the circuit court erred by imposing the guardianship without a formal finding that he is unfit. Bahner relies on *In re Guardianship of E.M.R.*, 2019 Ark. 116, 571 S.W.3d 15, to support his argument that without a formal finding of parental unfitness, a guardianship cannot stand, and the parent's right to retain custody of his or her children must be respected. Specifically, Bahner contends that *E.M.R.* stands for the

---

[2]In Act 713 of 2025, the general assembly amended this statute to require "clear and convincing evidence that the parent is unfit to care for the child" where a natural parent objects to the guardianship. 2025 Ark. Acts 713, § 11 (effective August 5, 2025). The proceedings reviewed in this appeal all predate the effective date of the revised statute.

proposition that a circuit court must make an explicit determination that a parent is unfit before interfering with the constitutional right of a fit parent to raise his or her child. Because Bahner's reliance on *E.M.R.* is misguided, we disagree.

*E.M.R.* was a termination case wherein our supreme court reversed the circuit court's order denying the mother's petition to terminate a guardianship of her minor children in favor of the paternal grandparents. When the circuit court granted the permanent guardianship in 2013, it made no finding that the mother was unfit. In 2017, the mother filed a petition to terminate the guardianship, and the circuit court placed the burden on her to prove that she was a fit parent. The circuit court entered an order denying the petition to terminate the guardianship, and our supreme court reversed, holding that the mother was entitled to the fit-parent presumption since she had not been found unfit in the permanent guardianship order.

In response, Wakefield correctly argues that this court has already struck down the same argument that Bahner makes here in *Galli v. Jones*, 2021 Ark. App. 302, 627 S.W.3d 434. Citing *E.M.R.*, the appellant in *Galli* sought reversal of a permanent guardianship in favor of her minor child's paternal grandmother because the court made no finding regarding Galli's fitness. However, this court affirmed the permanent guardianship order in favor of the grandmother and explained that *E.M.R.* was a termination-of-guardianship proceeding and that there are different statutory requirements between establishing a guardianship and terminating one. *Id.* This court also cited *Fletcher*, *supra*, noting that our

6

supreme court has already rejected the argument that a natural parent must be proved unfit before a guardianship may be entered. *Id.*

Here, Bahner never filed a petition to terminate the temporary guardianship. The hearing was a final hearing on whether to grant the permanent guardianship, and it resulted in a final order. Because Bahner's argument has already been rejected by this court, it has no merit.

### B. Natural-Parent Preference

Next, Bahner contends that the circuit court violated the constitutional presumption in favor of a fit parent by failing to acknowledge that he has not been found unfit and is presumed to act in the best interest of his children. In support of this argument, Bahner cites *Simmons v. Steele*, 2023 Ark. App. 386, wherein this court affirmed the circuit court's order terminating the guardianship in favor of the minor children's grandmother and afforded the natural father the fit-parent presumption. In *Simmons*, the grandmother appealed and argued that the termination was erroneous because by affording Steele the fit-parent presumption, neither prong of Arkansas Code Annotated section 28-65-401(b)(3)—necessity and ward's best interest—was satisfied. Simmons maintained that the statute must be strictly construed and does not require a showing that the parent is unfit.

Contrary to Bahner's argument, however, *Simmons* does not require reversal because it also involved a termination of guardianship rather than the establishment of one. Simmons filed to extend the guardianship, and in response, Steele moved to terminate and requested a hearing before the court. *Id.* Here, Bahner did not petition the court to

terminate the guardianship. Therefore, *Simmons* does not apply. As the court noted in *Simmons*, "[b]y petitioning to terminate the guardianship, the fit parent, who has the child's best interest at heart, informs the court that the guardianship is no longer necessary." *Id.* at 6 (citing *Donley v. Donley*, 2016 Ark. 243, 493 S.W.3d 762).

Furthermore, in *Fletcher*, *supra*, our supreme court held that it is within the circuit court's discretion to make a determination as to whether a parent is qualified and suitable. Moreover, the natural-parent preference is but one factor the circuit court must consider in determining who will be the most suitable guardian for the child. *Id.* Any inclination to appoint a parent or relative must be subservient to the principle that the child's interest is of paramount consideration. *Id.* More specifically, our supreme court held as follows:

> [S]ection 28-65-204(a) provides a natural-parent preference if the natural parent is qualified, and in the opinion of the court, suitable. The statute makes no mention of whether the natural parent is "fit" or "unfit," as those terms have been used in custody cases.
>
> . . . .
>
> We, therefore, take this opportunity to clarify that the sole considerations in determining guardianship pursuant to Ark. Code Ann. § 28-65-204(a) are whether the natural parent is qualified and suitable and what is in the child's best interest. To the extent that any of our prior cases suggest a standard of fitness or unfitness in guardianship proceedings involving the statutory natural-parent preference, we overrule them.

2010 Ark. 64, at 12–13, 359 S.W.3d at 420–21.

Here, the circuit court issued a letter detailing its findings in addition to a written order. The court found that "at this time, the father is not suitable to have guardianship of the minor children." The court also held that Wakefield met the qualifications to serve as

8

guardian of the minor children; Wakefield was the most suitable to serve as their guardian; it was in the best interest of the children to remain together and not be separated from their older sibling, MC3; and Jessica should have no visitation until she petitions the court for such. It also awarded unsupervised and increased visitation to Bahner. Furthermore, in its written order, the court held that the minor children were incapacitated by their minority; the guardianship was desirable to protect their interest; and Wakefield met the qualifications to serve as guardian and was suitable to do so.

We find that the circuit court made the required findings before appointing Wakefield as guardian pursuant to Arkansas Code Annotated section 28-65-210. The court also properly analyzed the statutory preference in section 28-65-204(a) and held that Bahner was unsuitable and that it was in the best interest of MC1 and MC2 to have Wakefield as their guardian. Whether Bahner, at the time of the guardianship hearing, was "suitable" to be the minor children's guardian is a decision within the court's discretion. Further, this court has held that nothing in section 28-65-204(a) requires specific findings. *See Sherland v. Sherland*, 2015 Ark. App. 342, 465 S.W.3d 3. Considering the testimony presented and the circuit court's superior position to weigh and assess the credibility of witnesses and their testimony, we are not left with a definite and firm conviction that a mistake was made by the circuit court.

## C. Termination of Guardianship

Finally, Bahner argues that the circuit court failed to apply the termination-of-guardianship statute, Arkansas Code Annotated section, 28-65-401(b)(3) (Repl. 2012), which

9

states that a guardianship may be terminated if it is no longer necessary or is no longer in the best interest of the child. We disagree. As discussed in detail above, because there are different statutory requirements for granting a guardianship—as the circuit court did here—and terminating a guardianship, section 28-65-401(b)(3) is not applicable; thus, this argument has no merit.

## V. *Conclusion*

For the reasons set forth above, we affirm the circuit court's order appointing Wakefield as MC1 and MC2's guardian.

Affirmed.

WOOD and MURPHY, JJ., agree.

*Hurst Law Group*, by: *Justin B. Hearst*, for appellant.

*Streit Law Firm, PLLC*, by: *Jonathan R. Streit*, for appellee.